IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01330-MSK-CBS

CECILIA RUPRECHT,

       Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, INC.,

       Defendant.

_____

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for

Summary Judgment **(# 32)**, the Plaintiff's response **(# 38)**, and the Defendant's reply **(# 49)**; and

the Plaintiff's Motion to Supplement **(# 48)** her summary judgment response and the Defendant's

response to that motion to supplement **(# 50)**.

## FACTS

The Court briefly summarizes the facts here, and elaborates as necessary in its analysis.

Ms. Ruprecht began her employment at Level 3 Communications ("Level 3") in 1999.  Over the

years, she was promoted several times, eventually rising to the position of Senior Manager of

Billing Operations in November 2007.  In April 2009, David Parrack was appointed Senior

Director of Billing Operations, becoming Ms. Ruprecht's supervisor.

The parties disagree sharply as to how subsequent events should be characterized, but it

is sufficient to observed that in mid-2009, Mr. Parrack reconfigured certain job duties and titles

1

in the Billing Operations department.  Specifically, Mr. Parrack modified the tasks to be performed by the Senior Manager, Billing Operations and gave it a new job title, Senior Manager, Usage Billing.  On or about June 28, 2009, Mr. Parrack met with Ms. Ruprecht to explain the changes in her responsibilities increased ti cover technical support and customer service.  Mr. Parrack also explained to Ms. Ruprecht that she would have to reapply for the new Senior Manager job.

Ms. Ruprecht did apply for the job, but so did Satish Thomas, a man who had previously been employed by Level 3.  On August 10, 2009, Mr. Parrack selected Mr. Thomas for the position, purportedly because Mr. Thomas' qualifications were superior to those of Ms. Ruprecht.  Ms. Ruprecht was reassigned into the position of Project Manager on a Data Usage team, a "non-management, independent contractor" position.  Level 3 contends that this was transfer was "more of form than of substance," insofar as she continued to perform essentially the same tasks and at the same salary.  Ms. Ruprecht characterizes the transfer as a significant demotion.

Ms. Ruprecht brings this action alleging two claims **(# 1)**: (i) a claim asserting both discrimination (which the Court understands to be sex discrimination) and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; and (ii) a claim asserting both discrimination and retaliation in violation of C.R.S. § 24-34-401 *et seq.*  The parties' briefing indicates that, with regard to the discrimination claim(s), the parties understand Ms. Ruprecht to allege two distinct claims of sex discrimination, one based on failure to promote into the new Senior Manager position, and one based on her "demotion" to Project Manager.

Level 3 moves **(# 32)** for summary judgment, arguing: (i) with regard to the failure to

2

promote claim, she cannot show a *prima facie* case insofar as she cannot show that she was qualified for the new position, circumstances giving rise to an inference of discrimination or that Level 3's proffered reason for selecting Mr. Thomas over her is pretextual; (ii) with regard to the demotion claim, she cannot show that she suffered an adverse action, that such action occurred in circumstances giving rise to an inference of discrimination, or that Level 3's proffered reasons for the action are pretextual; and (iii) with regard to the retaliation claim, she cannot show that her reassignment to Project Manager constituted an adverse action, cannot show a causal connection between her complaints and that action, and cannot show that Level 3's proffered reasons for the action are pretextual.

After Ms. Ruprecht filed her response to the motion, she filed a motion to supplement **(#48)** the response to tender an affidavit from a witness she had previously been unable to locate. Level 3 opposes the request to supplement, but also offers arguments as to why the tendered declaration is irrelevant.[1]

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that

---

[1] The Court has considered the tendered affidavit but finds that it does not change the analysis of the issues presented, therefore the motion to supplement is denied, as moot.

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

4

evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.  Discrimination claims**

Ms. Ruprecht asserts discrimination claims arising under both Title VII and Colorado's Civil Rights Act.  Claims under Colorado law are generally assessed according to the same analysis used in Title VII cases.  *Perez v. United Air Lines, Inc.*, 362 F.Supp.2d 1230, 1247 (D. Colo. 2005).  Absent some argument by the parties that Colorado law differs in some material way – and no such argument is made – the Court will analyze Ms. Ruprecht's claims solely under Title VII standards.

To establish a claim for sex discrimination under Title VII, Ms. Ruprecht must first establish a *prima facie* case by demonstrating: (i) that she is a member of a protected class; (ii) that she held the minimum objective qualifications for the position she sought or held; (iii) that she suffered an adverse employment action; and (iv) that adverse action occurred in circumstances giving rise to an inference of discrimination.  *See e.g.  EEOC v. PVNF, LLC.*, 487 F.3d 790, 800 (10th Cir.2007); *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1273-74 (10th Cir. 2006).  If Ms. Ruprecht makes that showing and Level 3 articulates a legitimate, non-discriminatory justification for the adverse action, Ms. Ruprecht bears the ultimate burden of showing that Level 3's proffered explanation is a pretext for discrimination.  *Id.*

1.  Failure to promote claim

The Court turns first to Ms. Ruprecht's claim that Level 3's failure to award her the modified Senior Manager position was the result of sex discrimination.  Level 3 does not dispute that Ms. Ruprecht is a member of a protected class or that the denial of the Senior Manager

5

position constituted an adverse action, and thus, the Court turns to the remaining two elements of the *prima facie* case: Ms. Ruprecht's objective qualifications and the existence of circumstances giving rise to an inference of discrimination.

Turning first to qualifications, at the *prima facie* case stage, an employee is merely required to demonstrate that she possessed the minimum, objectively-ascertainable qualifications for a position. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193-94 (10th Cir. 2000). The analysis at this stage is not whether Ms. Ruprecht was a better or worse candidate for the Senior Manager position than Mr. Thomas, but merely an inquiry into whether she possessed the basic qualifications to perform that job. *Id.* Although Level 3 now argues that Ms. Ruprecht lacked even the basic qualifications for the job, this argument is inconsistent with Level 3's own acknowledgment that applications for the Senior Manager position were sent to Human Resources for "initial review" and that two applications – Ms. Ruprecht's and Mr. Thomas'– "passed initial review" and were forwarded to Mr. Parrack for consideration. Indeed, Mr. Parrack interviewed Ms. Ruprecht for the position.[2] These facts are sufficient to demonstrate that Level 3 did not consider Ms. Ruprecht to lack the fundamental qualifications for the position. Accordingly, the Court finds that, taking the evidence in the light most favorable to Ms. Ruprecht, she can show this element of her *prima facie* case.

The final element of the *prima facie* case requires a showing that the adverse action – the selection of Mr. Thomas over Ms. Ruprecht – occurred in "circumstances giving rise to an

---

[2]Ms. Ruprecht denies that she was ever interviewed for the job, whereas Mr. Parrack testified that he did interview her. This is one of those unusual situations where, in taking disputed facts in the light most favorable to Ms. Ruprecht, the Court disregards Ms. Ruprecht's testimony and accepts Mr. Parrack's, as his testimony is more favorable to her for purposes of this particular element.

inference of discrimination."  This element can be satisfied in a variety of ways, such as identifying discriminatory remarks made by the decisionmaker, evidence of inconsistent treatment of similarly-situated employees, the systematic reassignment of her job duties to others, and, even more generally, upon a suspicious series of events, among many others.  *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).  Notably, Ms. Ruprecht's burden at this stage is relatively light; indeed, *Plotke* describes it as "*de minimis*."  *Id.*

The Court finds that Ms. Ruprecht has adequately identified circumstances that give rise to an inference that the selection of Mr. Thomas in preference to her was discriminatory.  Most significantly, Ms. Ruprecht has testified – testimony the Court takes in the light most favorable to her – that the tasks to be performed by the new Senior Manager position were tasks that she had been performing under the old Senior Manager title.  Ms. Ruprecht testified that the "new" tasks to be performed by the position – providing technical and customer support – were tasks that "already existed and I was already doing those roles."  Ms. Ruprecht also points to testimony from her co-workers to the effect that, after Mr. Thomas assumed the new Senior Manager positions, the nature of the work did not change.  Ordinarily, these facts would warrant an inference that Ms. Ruprecht would be considered a strong candidate to remain in the job she was already performing.  Thus, the fact that she was not selected for the new position permits an inference – at least for *prima facie* case purposes – that her rejection was discriminatory.

Accordingly, the Court finds that Ms. Ruprecht has demonstrated that she can establish a *prima facie* case.  The burden then shifts to Level 3 to articulate a legitimate, non-discriminatory reason for not selecting Ms. Ruprecht to fill the new Senior Manager position.  Level 3 states that it found Mr. Thomas to be a better-qualified candidate for that position.  Thus, the burden

shifts back to Ms. Ruprecht to show that this justification is untrue and a pretext concealing that sex discrimination was the true reason for not selecting her.

At the pretext stage, employees who contend that an employer's selection of one qualified candidate over another is pretext for unlawful discrimination face a formidable burden. Title VII prohibits intentional discrimination, not employment decisions that are unwise, unfair in some non-discriminatory way, or simply incorrect. *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010). The statute is violated only where "the employer didn't really believe its [own] proffered reasons" for selecting one candidate over another. *Id.* To make such a showing, Ms. Ruprecht must demonstrate that her qualifications were "overwhelming[ly] superior" to those of Mr. Thomas, such that no reasonable person could believe that Mr. Parrack would honestly find Mr. Thomas' credentials to be preferable to Ms. Ruprecht's.

The Court cannot find, on this record, that Ms. Ruprecht's qualifications for the Senior Manager position so exceed Mr. Thomas' that no reasonable employer would have selected Mr. Thomas for the position. Ms. Ruprecht does not dispute that Mr. Thomas had been employed by Level 3 for several years, that (according to his resume) he had "managed various integration projects in Voice and Data Billing" and that he had designed "multiple Usage Processing and Billing Systems" for the company. Ms. Ruprecht does not offer a substantial, point-by-point comparison Mr. Thomas' qualifications relative to her own; instead, she offers general arguments that he "had never managed the team she had managed for five years by that point," that "he didn't have data usage experience, he didn't have voice usage experience. He didn't know how to produce an invoice . . . and I did." Thus, it appears that although Ms. Ruprecht had experience in the day-to-day process of billing operations for several years, Mr. Thomas had

experience in designing the technical billing systems that Ms. Ruprecht used. Given that Level 3's intention in redesigning the position was, among other things, to increase the Senior Manager's focus on technical support issues, the Court cannot say that Mr. Parrack's preference for a more technically-inclined candidate over one with experience in the prior (*i.e.* less technically-focused) iteration of the position is unreasonable.[3]

The primary thrust of Ms. Ruprecht's opposition, however, is not directed at claiming she was a better candidate than Mr. Thomas. Rather, she argues that the entire purpose of the redesign of her job was to "fit the person they had already decided to hire, and that person was [Mr. Thomas]." She alleges that "it was [Level 3] that first came up with the idea of reaching out to Mr. Thomas," and that a Level 3 official "point-blank testified . . . that the job description for the job . . . was re-written as a direct result of conversations with [Mr.] Thomas himself." But this argument, even if true, does not materially advance Ms. Ruprecht's sex discrimination claim. It merely demonstrates that Level 3 had found a person they wanted to hire and redesigned an existing position – Ms. Ruprecht's – to take advantage of Mr. Thomas' particular skills. Such conduct, while perhaps offensive to Ms. Ruprecht's expectations of Level 3's loyalty, honesty, or fair play, is not inherently discriminatory. Even taking all of Ms. Ruprecht's factual contentions as true, she points to nothing <u>discriminatory</u> in such conduct beyond the fact that Mr. Thomas is male and Ms. Ruprecht is female. The mere fact that she was rejected in favor of a male might be enough to establish a *prima facie* case, but it is not enough to

---

[3]Ms. Ruprecht contends that Mr. Thomas "bombed in his performance" and "did not accomplish anything" in the five months he held the job. This contention, even if true, is irrelevant. In the pretext inquiry, the Court evaluates the candidates' qualifications "in light of the facts available to the decisionmaker at the time of the decision, not in light of facts . . . that might have become apparent only in hindsight." *Johnson*, 594 F.3d at 1211-12.

demonstrate that Level 3's stated justification for hiring Mr. Thomas is pretext.  (If anything, it underline confirms Level 3's contention that it preferred Mr. Thomas's qualifications over Ms. Ruprecht's for a position that Level 3 had specifically designed to match Mr. Thomas' skills.)

Accordingly, the Court finds that even in the light most favorable to Ms. Ruprecht, the evidence does not permit a conclusion that Level 3's proffered reason for selecting Mr. Thomas over her for the new Senior Manager position was a pretext for sex discrimination.  Level 3 is thus entitled to summary judgment on Ms. Ruprecht's failure to promote claims.

2. Demotion claim

Ms. Ruprecht also contends that, once she was not selected for the new Senior Manager position, her transfer to a "Project Manager" position constituted a demotion, itself an act of sex discrimination.

Level 3 first challenges this claim by arguing that the reassignment to Project Manager is not an adverse employment action.  To be an actionable "adverse employment action" for purposes of a discrimination claim, an action must be one that entails "a significant change in employment status, such as . . . reassignment with significantly different responsibilities or a decision causing a significant change in benefits."  *Robinson v. Cavalry Portfolio Services, LLC*, 365 Fed.Appx. 104, 114 (10th Cir.2010) (unpublished), *citing Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1222 (10th Cir. 2006).

Other than repeatedly mentioning the fact of her demotion, Ms. Ruprecht's brief offers no meaningful analysis of the demotion as an actionable claim.[4]  She does not, for example, offer

---

[4]The actual "discussion" section of this claim in her brief consists of four sentences, and no citations to authority.

any meaningful response to Level 3's contention that, as a matter of law, the change in jobs does not constitute an adverse employment action.  It appears to be undisputed that Ms. Ruprecht continued to receive the same salary and benefits as a Project Manager as she had earned as Senior Manager.[5]  It also appears that Ms. Ruprecht's duties were largely unchanged.  She testified that, as Project Manager, "I was to work on a list of issues that I created when I was the senior manager." She does allege that she was "demoted three levels and out of management."  It is not clear what the "three levels in the management hierarchy" she refers to are, nor how that change in "levels" affected her terms and conditions of employment.  The significance of her contention that she was "out of management" is unclear: nowhere in her response brief does she explain the meaning of that phrase nor point to evidence in the record that supports it.  The Court assumes that Ms. Ruprecht means that, as Project Manager, she no longer supervised employees as she had done as Senior Manager, but Ms. Ruprecht does not explain how that loss of supervisory power rises to the level of an actionable adverse action.  The Court has profound doubt that Ms. Ruprecht's minimal analysis of this issue is sufficient to demonstrate that there is a genuine issue of fact as to whether her reassignment to Project Manager constituted an adverse employment action.  Nevertheless, the Court will assume – without necessarily finding – that Ms. Ruprecht was stripped of her supervisory power as a result of the reassignment, and the Court will further assume that such a loss of authority can constitute an adverse employment action.

The Court also has reservations as to whether Ms. Ruprecht can show that her

---

[5]Ms. Ruprecht testified that she thought that "my [salary] band changed" and her targets for being eligible for bonuses changed as a result of the "demotion," but she acknowledged that she did not know for a fact that this was the case.

reassignment occurred in circumstances giving rise to an inference of discrimination.  Once Mr.

Thomas was given the Senior Manager position, Ms. Ruprecht necessarily had to be reassigned

to another job.  Although she makes much of the fact that her reassignment to Project Manager

was a "three level demotion" and took her out of a supervisory role, she does not point to any

evidence to suggest that there was an available position she could have filled that did not carry

such stigma.  Nevertheless, Ms. Ruprecht contends that no other men were involuntarily

reassigned from Senior Management-level positions to Project Manager-level positions, and

thus, the Court will assume that she has – albeit barely – shown that her "demotion" occurred in

circumstances giving rise to an inference of discrimination.

        The burden thus shifts to Level 3 to articulate a legitimate, non-discriminatory reason for

its decision to "demote" Ms. Ruprecht to Project Manager.  Level 3 explains that, due the hiring

of Mr. Thomas and the restructuring of the Billing Department, Ms. Ruprecht was no longer

going to occupy the Senior Manager position.  As a result, she had a choice to either accept a

severance from Level 3 or to preserve her employment through an available position such as

Project Manager.  Level 3's explanation that the "demotion" to Project Manager was a result of

the fact that there were no other available openings for Ms. Ruprecht to fill is a legitimate, non-

discriminatory reason, and Ms. Ruprecht bears the burden of demonstrating that reason is false

and a pretext for sex discrimination.

        Ms. Ruprecht fails to do so.  She does not point to a management-level position in the

Billing Department that was available that she could have filled (other than the Senior Manager

position which was obviously not "available" once Mr. Thomas was selected to fill it), nor points

to any other evidence that would suggest that Level 3 had other, more favorable options to retain

her as something besides a Project Manager.  By all appearances, her "demotion" was nothing more than her landing in a new (and mostly-comparable) position after her Senior Manager job was reassigned.  Obviously, most employees displaced from a job will fall some distance down the corporate ladder and suffer some loss of prestige or authority when taking on a new position; only a lucky few will be able to move laterally without any disruption.  Thus, once it is accepted that Level 3's decision to redesign Ms. Ruprecht's job and give it to Mr. Thomas was not discriminatory, there can be little argument that Level 3's decision to preserve much of Ms. Ruprecht's terms and conditions of employment by making her a Project Manager was not discriminatory either.  Accordingly, Level 3 is entitled to summary judgment on all of Ms. Ruprecht's discrimination claims.

### C.  Retaliation

Finally, Ms. Ruprecht contends that the decision to give her Senior Manager job to Mr. Thomas and to demote her to Project Manager were unlawful retaliation against her for having previously complained of discrimination.  To establish such a claim, Ms. Ruprecht must first establish a *prima facie* case by showing that: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there is a causal connection between the protected activity and the adverse action.  If she carries that burden, Level 3 is obligated to articulate a legitimate, non-retaliatory reason for the adverse action, and Ms. Ruprecht is required to prove that the proffered reason is a pretext for retaliation.  *Fye v. Oklahoma Corp. Comn.*, 516 F.3d 1217, 1227 (10th Cir. 2008).

Level 3 contends that Ms. Ruprecht cannot show that she suffered an adverse employment action, but the preceding discussion establishes that both her non-selection for the

new Senior Manager job and her "demotion" to Project Manager constitute adverse actions for purposes of a discrimination claim, and thus, by definition, they also constitute adverse actions for a retaliation claim. *See generally Burlington Northern & Santa Fe RR Co. v. White*, 548 U.S. 53, 68 (2006) (explaining that adverse action element for retaliation claims is less demanding than for discrimination claims).

Level 3 also argues that Ms. Ruprecht cannot show a causal connection between her protected conduct and these adverse actions. The record on this issue is somewhat unclear, owing to a lack of detail regarding Ms. Ruprecht's actual protected activities. The first (and perhaps only) instance of protected conduct disclosed in the record here is an e-mail from Ms. Ruprecht's counsel to Level 3, sent on June 26, 2009. That e-mail is vague in its particulars, stating little more than the fact that Ms. Ruprecht had retained counsel and that counsel's "preliminary investigation confirms that she has a strong case of discrimination and a somewhat less powerful case of retaliation at this point."[6] Ms. Ruprecht argues that Mr. Parrack's June 28, 2009 advisement that her job was being redesigned thus follows closely on the heels of that protected conduct, such that an inference of causation may be had. *Fye*, 516 F.3d at 1228.

But this argument ignores Ms. Ruprecht's contention that Level 3 had already been planning to redesign her job and replace her with Mr. Thomas for quite some time. Ms. Ruprecht contends that Mr. Parrack "created three successive job descriptions," for the new position, "so that posting fit the person [Mr. Thomas] they had already decided to hire." Ms. Ruprecht does not identify the precise time frame in which these three job descriptions were

---

[6]Nothing in the record before this Court discloses the alleged protected conduct that Ms. Ruprecht engaged in <u>prior</u> to June 26, 2009, such that her counsel would believe that she had a colorable retaliation claim already as of that date.

14

created, but the undisputed evidence in the record indicates that Mr. Parrack submitted a job description for the new Senior Manager position to Level 3's Human Resources Department on June 19, 2009, a week before Ms. Ruprecht's e-mail complaining of discrimination.  If as Ms. Ruprecht contends, the submission of a job description tailored to Mr. Thomas' strengths was part of Level 3's plan to give her job to Mr. Thomas, that plan was already underway on June 19, 2009, predating any protected conduct by Ms. Ruprecht that is revealed in the record[7] and defeating any inference that could be drawn between her protected conduct and the decision to give her job to Mr. Thomas.

Admittedly, Mr. Parrack's informing Ms. Ruprecht of the changes to her job on June 28, 2009, and the formal selection of Mr. Thomas over Ms. Ruprecht on August 10, 2009 do indeed closely follow Ms. Ruprecht's protected complaint on June 26, but those events are part and parcel of the unitary "plan" to replace her that she contends was already underway prior to June 26.  In this sense, Ms. Ruprecht has proven too much.  Taken alone, the June 28 and August 10 decisions would likely support a *prima facie* claim for retaliation, but by contending that those events are simply part of a larger scheme by Level 3 – one which extends backwards in time well before Ms. Ruprecht's protected conduct – Ms. Ruprecht destroys the very causal connection she seeks to establish.

Accordingly, the Court finds that Ms. Ruprecht has failed to demonstrate a causal

---

[7]Ms. Ruprecht's brief suggests that Level 3's planning began even earlier.  She contends that Eric Frisillo, "a high-level company manager," "first came up with the idea of reaching out to hire Mr. Thomas," and contacted him to get him to apply for the job.  Another manager, Fletcher Keister, testified that Mr. Frisillo  "mentioned Mr. Thomas as somebody he knew who had the capabilities and potential . . . and then subsequently, the formal job description was written up as a result of those conversations."

connection between her protected conduct and the adverse actions against her, and thus, cannot establish a *prima facie* case of retaliation.

## CONCLUSION

For the foregoing reasons, Level 3's Motion for Summary Judgment **(# 32)** is **GRANTED**, and the Clerk of the Court shall enter judgment in favor of Level 3 on all claims in this action.  Ms. Ruprecht's Motion to Supplement **(# 48)** is **DENIED AS MOOT**.

Dated this 29th day of February, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge